**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

JEFFREY NELSON,  :
                               :   Civil Action No. 12-2269 (NLH)
        Petitioner, :
                               :
           v.              :   **OPINION**
                               :
DONNA ZICKEFOOSE, Warden,    :
                               :
        Respondent.   :

**APPEARANCES:**

Petitioner pro se
Jeffrey Nelson
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640

Counsel for Respondent
John Andrew Ruymann
Assistant U.S. Attorney
Office of the U.S. Attorney
402 East State Street
Suite 430
Trenton, NJ  08608

**HILLMAN**, District Judge

    Petitioner Jeffrey Nelson, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The sole named Respondent is Warden Donna Zickefoose.

Because it appears from a review of the Petition and the parties' submissions that Petitioner is not entitled to relief, the Petition will be denied.

## I.  BACKGROUND

On November 17, 2010, Petitioner was sentenced in the United States District Court for the Eastern District of Pennsylvania to a 30-month term of imprisonment, upon his conviction for Making a False Statement in a Passport Application, in violation of 18 U.S.C. § 1452, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1) and (c)(7).  See United States v. Nelson, Criminal No. 10-0165 (E.D. Pa.).  Petitioner's projected release date is March 7, 2013.

Petitioner has submitted this Petition for writ of habeas corpus challenging certain aspects of the execution of his federal sentence.  By Order [4] entered August 6, 2012, this Court denied Petitioner's claim that the Bureau of Prisons had

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

2

failed to implement the Federal Prisoner Re-entry Initiative, 42 U.S.C. § 17541, by failing to create new programs that would render prisoners eligible for consideration for a 12-month pre-release placement in a Residential Re-entry Center ("RRC"), and ordered Respondent to answer with respect to the remaining claim that Petitioner's Unit Team had failed to properly consider his participation in existing inmate skills development programming in determining his pre-release RRC placement, purportedly contrary to the requirements of the Second Chance Act.[2]  Briefing is complete and this matter is now ready for decision.

## II.  ANALYSIS

A.  The Second Chance Act

Title 18 Section 3621(b) governs Bureau of Prisons inmate placement decisions, generally, and provides:

> (b)  Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
> (1)  the resources of the facility contemplated;
> (2)  the nature ad circumstances of the offense;
> (3)  the history and characteristics of the prisoner;

---

[2] Respondent concedes that Petitioner has exhausted his administrative remedies with respect to this claim.

> (4) any statement by the court that imposed the sentence -
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
> (B) recommending a type of penal or correctional facility as appropriate; and
> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 ... .
>
> ... Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

In general, community corrections facilities are "penal or correctional" facilities within the meaning of § 3621(b) and a prisoner can be placed at a community corrections facility at any time during his imprisonment. See, e.g., Miller v. Federal Bureau of Prisons, 147 Fed.Appx. 302 (3d Cir. 2005).

A separate provision, 18 U.S.C. § 3624(c), governs the BOP's obligation to facilitate inmates' re-entry into society, and permits the BOP, among other things, to place prisoners in pre-release community confinement. As amended by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008, Section 3624(c) provides, in pertinent part:

> (1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the

>community.  Such conditions may include a community correctional facility.
>
>(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
>...
>
>(4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
>...
>
>(6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--
>
>>(A) conducted in a manner consistent with section 3621(b) of this title;
>>
>>(B) determined on an individual basis; and
>>
>>(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c) (emphasis added).

Thus, the current obligation of the BOP, under § 3624(c), to consider a twelve-month pre-release RRC placement does not limit the BOP's discretion, under § 3621(b), to confine a prisoner in an RRC, at any time, for any period.

As noted in the statute, the BOP was directed to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that pre-release

5

placement determinations would be conducted consistently with 18 U.S.C. § 3621(b), that the determinations would be individualized, and that the duration of placements would be sufficient.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the <u>pre-release</u> provisions of the Second Chance Act.  (Answer, Declaration of Konrad Adamiec, Att. 7, BOP Memo, April 14, 2008.)[3]  The April 14 Memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04 concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided that BOP "staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-release RRC placement.  Provisions in PS 7310.04 that reflect any other possible maximum timeframe must be ignored."

---

[3] The Declarant, Konrad Adamiec, identifies himself as a Case Manager who has been employed by the Bureau of Prisons since September 28, 2008, who has been employed at the Federal Correctional Institution at Fort Dix since December 19, 2010, and who was Petitioner's Case Manager and a member of his Unit Team at the time of the events relevant to this Petition.  (Answer, Adamiec Decl.)

(Adamiec Decl., Att. 7 (emphasis in original).) Nevertheless, the Memorandum went on:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less. Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

(Adamiec Decl., Att. 7.)

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for evaluating inmates' pre-release placement decisions to RRCs or home detention. See 28 C.F.R. §§ 570.20-570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.[4]

---

[4] Title 28 of the Code of Federal Regulations, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which provides:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.

On November 14, 2008, after issuance of the new regulations, the BOP issued an additional internal guidance memorandum. The November 14 Memorandum provides guidance to BOP staff for considering and responding to inmate requests for transfer to RRCs when <u>more</u> than twelve months remain to the inmate's projected release date.[5] More specifically, the November 14 Memorandum provides, <u>inter</u> <u>alia</u>:

> Individualized Consideration Required
>
> Inmates are legally eligible to be placed in an RRC at any time during their prison sentence. Federal Courts have made clear that RRCs <u>are</u> penal or correctional facilities within the meaning of the applicable statutes. Staff cannot, therefore, <u>automatically</u> deny an inmate's request for transfer to a RRC. Rather, inmate requests for RRC placement must receive individualized consideration. In other words, staff <u>cannot</u> say that an inmate, whatever the circumstances, is <u>automatically ineligible</u> for transfer to a RRC. Rather, staff must first review the inmate's request on its individual merits, in accordance with policy, and as explained in this guidance.

---

> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

[5] The November 14 Memorandum specifically notes that the previous guidance contained in the April 14 Memorandum "remains in full effect."

8

> Timing of Reviews
>
> If an inmate requests transfer to an RRC prior to the pre-release time frame of 12-months from release, staff must individually consider the request, just as they would any other request for lower security transfer. There is no need, however, to immediately perform the individualized review at the moment it is submitted. Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review. [footnote omitted]
>
> When informing inmates of the timing for review of transfer requests, it is vitally important that staff <u>not</u> inform the inmate (either orally or in writing) that he/she is <u>ineligible</u> for transfer to a RRC. Telling an inmate that he/she is <u>ineligible</u> for RRC placement is the same as <u>automatically</u> denying the inmate from even being considered for such placement, and is not in accord with Bureau policy.

(Answer, Adamiec Decl., Att. 8 (emphasis in original).)

Most recently, on June 24, 2010, the BOP issued a third, revised guidance memorandum. The June 24, 2010, Memorandum directs BOP staff to "focus on RRC placement as a mechanism to reduce recidivism." (Answer, Adamiec Decl., Att. 9.) The June 24, 2010, Memorandum states that "Our strategy is to focus on inmates who are at higher risk of recidivating and who have established a record of programming during incarceration, so that pre-release RRC placements will be as productive and successful as possible." The 2010 Memorandum reminds staff to made individual assessments based upon the factors enumerated in § 3621(b). Finally, the 2010 Memorandum provides that Regional Director approval of RRC placements longer than six months "is no longer required."

In addition to the changes to § 3624 described above, the Second Chance Act enacted 42 U.S.C. § 17541, which provides for the establishment of a Federal Prisoner Reentry Initiative. Section 17541 provides, in relevant part:

> (a) The Attorney General, in coordination with the Director of the Bureau of Prisons, shall, subject to the availability of appropriations, conduct the following activities to establish a federal prisoner reentry initiative:
>
>> (1) The establishment of a Federal prisoner reentry strategy to help prepare prisoners for release and successful reintegration into the community, including, at a minimum, that the Bureau of Prisons--
>
> ...
>
>> (G) provide incentives for prisoner participation in skills development programs.
>
>> (2) Incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director include -
>
>>> (A) the maximum allowable period in a community confinement facility; ... .

42 U.S.C. § 17541(a). Thus, pursuant to § 17541(a)(2)(A), one incentive for inmate participation in BOP skills development programs is consideration for the maximum allowable placement in an RRC.

B.   Petitioner's Claim Regarding Application of the Act

On January 4, 2011, Petitioner was designated to the Federal Correctional Institution at Fort Dix. On July 29, 2011, Petitioner's Unit Team performed an initial assessment with

respect to RRC placement.  Because the Unit Team believed that Petitioner was subject to an active Bench Warrant, he was not recommended for RRC placement.

On October 25, 2011, after the Unit Team learned that the Bench Warrant had been rescinded, the Unit Team reconsidered Petitioner for RRC placement.  At that time, the Unit Team completed a Residential Re-Entry Center Consideration/Re-Consideration form.  (Answer, Adamiec Decl., Att. 3.)  The form recites that the Unit Team considered (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement of the court that imposed the sentence, (a) concerning the purposes for which the sentence to imprisonment was determined to be warranted, or (b) recommending a type of penal or correctional facility as appropriate; (5) any pertinent policy statement issued by the U.S. Sentencing Commission; and (6) whether the inmate completed (a) Inmate Skills Development programming, (b) non-residential Drug Abuse Treatment Program, or (c) Residential Drug Abuse Treatment.  The form further recites that the Unit Team also considered Petitioner's need for services, public safety and the necessity of the Bureau of Prisons to manage its inmate population.  (Adamiec Decl., Att. 3.)

The form includes a narrative explanation of the results of this assessment.

> Inmate Nelson is a 45-year old male convicted in the Eastern District of Pennsylvania and sentenced to 30 months for Making a False Statement in a Passport Application and Aggravated Identity Theft.  He has no promise of employment, however he has a past employment history as a CAD operator.  His educational background includes the completion of college courses in accounting and hotel restaurant management, and the completion of two programs in Auto-CAD drafting programs.  He intends to reside with his wife in Parkville, Maryland.  During this period of incarceration, inmate Nelson maintained clear conduct.  He recently completed the Parenting Program and is on the waiting list to participate in the Release Preparation Program.  The Court that imposed the sentence did not provide a statement regarding the duration of RRC placement.  With consideration of the above factors, the Unit Team considers inmate Nelson a low-risk inmate for recidivism due to his secured residence and educational and vocational skills.  As a result, the Unit Team recommends 90 to 120 days RRC placement time.

(Answer, Adamiec Decl., Att. 3.)[6]

Petitioner contends here that Respondent violated the Second Chance Act and procedural due process by failing to make an individualized assessment of his eligibility for the maximum 12-month pre-release RRC placement as required by § 17541.  More specifically, Petitioner contends that the Unit Team did not consider him for a 12-month placement as an incentive for

---

[6] Petitioner has since been approved for RRC placement and provided an RRC reporting date of November 8, 2012.  Neither party has advised the Court whether that RRC placement has taken place.

completing programming, as evidenced by the "boilerplate" responses to his administrative grievances.

> In his Declaration, Case Manager Adamiec states:
>
> It is my understanding that Petitioner alleges his Unit Team did not consider his Inmate Skills Development ("ISDS") programming when considering him for RRC placement or any associated incentives. Petitioner is incorrect. First, as demonstrated on the Residential Re-Entry Center Consideration/Reconsideration forms, ISDS programming is one of the factors staff consider when making an RRC recommendation. Moreover, it was noted on both RRC Consideration/Re-Consideration forms that Petitioner was participating in the Parenting Program. At that time, the Parenting Program was the only program Petitioner completed while incarcerated under the current sentence. While Petitioner did apply to the Residential Drug Abuse Program (RDAP), he was deemed not qualified, and could not participate in the program. Petitioner, in no way, participated in an extraordinary amount of programming to warrant any type of participation incentive.

(Answer, Adamiec Decl., ¶ 9.)

Petitioner pursued administrative remedies with respect to his request for programs that would qualify as incentive based skills development programs and that would permit a maximum 12-month RRC placement pursuant to § 17541. In response, Warden Zickefoose detailed the RRC placement process and further advised Petitioner as follows:

> With respect to your request for an Incentive Based Skills Development program, there is not one specific program that will qualify you for 12 month RRC placement. Rather, one of the factors considered in making an RRC recommendation is whether Unit Team's program recommendations were followed after identifying weaknesses. Therefore, you should participate in any programming recommended by your Unit Team. This response is for informational purposes.

13

(Answer, Decl. of Tara Moran, Ex.2.)  The response from the Regional Director reviewed Petitioner's claim that he was not considered for incentives for program participation, as well as his claim that the 90-120 day recommendation was insufficient, and found no abuse of discretion.  The Administrator for National Inmate Appeals, in response to Petitioner's request for placement into Incentive Based Skill Development Programs in order to receive the maximum 12-month RRC placement, advised that placement beyond 180 days was highly unusual and that Petitioner's record "does not provide any extraordinary justification necessary for additional RRC placement time." (Answer, Moran Decl., Ex. 2.)  These are not "boilerplate" responses, but are tailored to Petitioner's individual claims and circumstances.

The Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for <u>up to</u> the final twelve months of his or her sentence." <u>See</u> <u>Lovett v. Hogsten</u>, 2009 WL 5851205, *2 (6th Cir. Dec. 29, 2009) (unpubl.) (emphasis in original). Nothing in the Second Chance Act entitles a federal prisoner to any particular length of pre-release placement in an RRC.  These pre-release placement decisions are committed by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated

14

considerations.  Travers v. Federal Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30, 2009).

Accordingly, this Court's review is limited to whether the Bureau of Prisons abused its discretion.  Vasquez v. Strada, 684 F.3d 431, 434 (3d Cir. 2012) (citing Barden v. Keohane, 921 F.2d 476, 478 (3d Cir. 1991)).  Here, the record clearly establishes that the Unit Team and reviewing officials properly exercised their discretion in accordance with the statutory factors. Petitioner's disagreement with the outcome does not entitle him to habeas relief.  See Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010).  Petitioner has not demonstrated that he "is in custody in violation of the Constitution or law or treaties of the United States ...," as required for relief under 28 U.S.C. § 2241.

### III.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  All pending motions and applications will be dismissed as moot.  An appropriate order follows.


At Camden, New Jersey               s/ Noel L. Hillman
                                    Noel L. Hillman
                                    United States District Judge

Dated: January 9, 2013

15